611 So.2d 566 (1992)
NATIONAL ADVERTISING COMPANY, Appellant,
v.
STATE of Florida, DEPARTMENT OF TRANSPORTATION, and William A. Ogilvie, Appellees.
No. 91-3330.
District Court of Appeal of Florida, First District.
December 31, 1992.
Rehearing Denied February 5, 1993.
*567 Mark S. Ulmer, Stanley W. Moore and Alan E. DeSerio, of Brigham, Moore, Gaylord, Wilson, Ulmer, Schuster and Sachs, Tampa, for appellant.
Thornton J. Williams, Gen. Counsel, Gregory G. Costas, Asst. Gen. Counsel, Dept. of Transp., Tallahassee, for appellees.
WIGGINTON, Judge.
National Advertising Company appeals a final judgment entered in a condemnation proceeding awarding National the sum of $38,400 as compensation for the taking of its leasehold interest. This award amounted to the replacement cost of National's billboard sign. We reverse.
As noted, the appeal arises from an eminent domain proceeding in which the Department of Transportation sought to condemn property located in Duval County. Among the parties listed was National Advertising Company, which held a leasehold interest in the property.
In its answer to DOT's petition, National alleged that its leasehold was improved with an outdoor advertising structure and that, as improved, the leasehold constituted valuable property protected by the Florida Constitution. Accordingly, National requested a jury trial to determine "full compensation" to which it was entitled, including, but not limited to, "the fair market value of the property and property rights taken" from National.
The trial court entered an "Order of Taking" directing that upon depositing the amount set forth in the order, all right, title and interest specified in the petition would vest in DOT. DOT thereafter deposited the sum specified.
Subsequently, at a pre-trial hearing, it was announced that DOT and the fee owner had reached a settlement of what those parties considered "fair compensation" as to the parcel in question. It was represented that DOT and the fee owner were setting up an apportionment hearing with the lessees; however, National was not included. After explaining the impact of taking upon National's leasehold and sign structure, counsel for National suggested the settlement could go forward if DOT agreed to sever out National's claim. In fact, National stated it would object to any settlement approved by the court purporting to bind it without its consent, and argued that the court should not approve a settlement until the matter of National's claim be considered. The court agreed and set the matter down for hearing. Notwithstanding, *568 DOT and the fee owner entered into a stipulation that was signed only by counsel for the specific parties named therein.
An apportionment hearing was then held at which the other lessees who had agreed to the settlement were to present their claims. The trial court also addressed more fully National's objection to the settlement. DOT argued that National's only entitlement to an award was either pursuant to the Federal Uniform Relocation Act or by way of apportionment of the settlement between DOT and the fee owner. After submitting that relocation assistance was irrelevant to the issue of full compensation and noting that it had not been privy to the settlement negotiations, National represented that its presentation of the value of the property encumbered by the lease would have been over $100,000 more than that settled upon by DOT and the fee owner. However, National allowed that if the court ruled that National was bound by the settlement, then it was prepared to participate in the apportionment hearing.
Thereafter, at the insistence of DOT, the trial court heard all apportionment testimony, including evidence presented by National, and entered its "Order on Petition for Apportionment and Distribution." In the order, the court specifically noted that it was not ruling on the claims of National, which instead would be the subject of a separate order.
The court then entered a "Second Order on Petition for Apportionment and Distribution," acknowledging National's motion for jury trial and stating the request would be granted by separate order. In an order entered the next day setting the case for jury trial, the court specifically recognized National's claim "for full compensation due it for the taking of its leasehold interest in Parcel 239, as improved." Thereafter, in a subsequent pre-trial order, the court stated that the issue of damages would be considered in accordance with Department of Transportation v. Heathrow Land & Development Corporation, 579 So.2d 183 (Fla. 5th DCA 1991). However, due to the difficulty encountered in obtaining a jury panel, the parties agreed to try the issue of full compensation due National before the trial court sitting as finder of fact.
In its case-in-chief, DOT's only witness was a real estate appraiser who had performed an initial appraisal of the subject parcel. He was instructed by DOT to appraise the "billboard itself," and therefore did not utilize a market approach to determine compensation. In his opinion, National was entitled to be compensated in the amount of $38,400 based upon an estimate of the amount of money it would take to replace the sign structure; however, he also agreed that while he had described the amount as a replacement cost, National in fact could not actually replace or relocate the sign anywhere in the Jacksonville market area as a result of a county sign ordinance. When specifically asked his opinion as to the fair market value of National's leasehold as of the date of taking, the appraiser indicated he had not formed an opinion regarding that value but had appraised only the sign separate and apart from the leasehold. At that point, counsel for National moved to strike his testimony on the basis that the appraiser had "expressed no opinion" on the issue of the fair market value of National's leasehold. The motion to strike was denied.
In turn, National's expert appraisal witness testified that he was asked by National to appraise the fair market value of the leasehold as improved with the outdoor advertising structure. This witness indicated he had utilized an appraisal approach known as the gross income multiplier method. He indicated that this approach typifies the method used by buyers and sellers in the industry market and is recognized as a market approach using a multiplier as a unit of comparison analogous to "price per square foot." He explained that the multiplier is established from sales data and is derived by dividing the effective gross income (rent) produced by the sign into the sales price of the sign.
According to this witness, once the multiplier was derived in the instant case, upon considering comparable sales information, he next determined the effective gross income from the instant sign to which the *569 multiplier would be applied by conducting a rent study to determine what the market rent would be for the two "faces" of the sign. From these figures, he determined a net rental figure by deducting a percentage for commissions paid and by taking into account the occupancy factor. By doing so in the instant case, the witness arrived at a figure of $81,000, indicating that if National had elected to sell its improved leasehold on the date of taking, it could have done so for that amount.
In rebuttal, over National's objection, DOT called a second appraisal witness who had previously appraised the fee simple interest in the parcel on behalf of the property owner. It was this witness' opinion that neither the sign nor the leasehold contributed any value to the land. Additionally, it was his opinion that the sign was removable personalty, and that the use of the gross income multiplier produced a business damage or business value as opposed to a value to the fee itself. It was this witness' opinion that the gross income multiplier was not appropriate for a movable object like the outdoor advertising sign because it in fact represented a business value.
Following trial, the court entered a verdict for the "value of the billboard" in the amount of $38,400. Final judgment was entered in the same amount.
In a motion for rehearing, National argued to the trial court that DOT had presented no testimony regarding the fair market value of the leasehold as improved, and that the testimony adduced was contrary to the court's pre-trial ruling on the subject. It was further argued that awarding National only the replacement cost of the sign resulted in the taking of National's leasehold interest without payment of compensation. The motion for rehearing was denied.
Initially, we must caution that this case stands alone as an aberration from the normal course of proceedings in eminent domain. Normally, upon the taking of property encumbered by a leasehold interest, a jury is impaneled to consider "all pertinent proffered facts touching the value of the fee and the leasehold," and to evaluate each interest before rendering an inclusive verdict. Carter v. State Road Department, 189 So.2d 793, 796 (Fla. 1966) (emphasis added). After a verdict has been rendered, the parties next proceed to an apportionment hearing at which the court determines their respective rights in the amount awarded. Dama v. Record Bar, Inc., 512 So.2d 206, 208 (Fla. 1st DCA 1987).
Instead, in the instant case, DOT sought to settle with the fee owner, excluding National and failing to take into consideration National's leasehold interest. It has long been established that a "lessee" is an owner protected by the constitutional guarantee in Article X, section 6(a) of the Florida Constitution against the taking of private property without compensation. Carter v. State Road Department; Dama v. Record Bar, Inc. Perhaps recognizing the potential inequity to National's interest, the court entered an order granting National the jury trial it had requested and specifying that the jury would consider the issue of full compensation to be paid for the taking of National's leasehold interest independent of the amount settled on by DOT and the fee owner. No party has challenged that order.
In the hearing that followed, it was DOT, as the condemning authority, that bore the burden of presenting evidence of full compensation for the value of the land taken, which in this case was the leasehold interest as a part of that land value. See City of Ft. Lauderdale v. Casino Realty, Inc., 313 So.2d 649, 652 (Fla. 1975); Division of Administration, State of Florida, Department of Transportation v. Grossman, 536 So.2d 1181 (Fla. 3d DCA 1989). However, DOT expressly failed to adduce any evidence going to National's leasehold interest; instead, it presented evidence only of the billboard's replacement cost.[1] Thus, *570 contrary to DOT's position in this appeal, it is not National's valuation approach that is at issue, but rather the competency and relevancy of DOT's expert testimony in carrying its burden below.
As emphasized by National, its leasehold in the instant case was very valuable. The leasehold had the potential of being extended until the year 2006 and, most significantly, due to its location, was exempt from the forced scheduled removal under the county's strict sign ordinance. Although National sought a variance to relocate the sign on the remaining property, its request was denied. Thus, this "grandfathered" nonconforming status was lost when the taking occurred and the sign was ultimately removed by DOT; in short, the sign could not be moved to a new location and National lost all by the taking. In that respect, it should be noted that the involuntary termination of a nonconforming "grandfathered" status by government compulsion has given rise to a compensable taking of private property. Lewis v. City of Atlantic Beach, 467 So.2d 751 (Fla. 1st DCA 1985). Notwithstanding, the verdict rendered herein gave absolutely no consideration to National's leasehold interest, but, instead, was limited solely to the value of the billboard.
We do not believe that the Fifth District's decision in Department of Transportation v. Heathrow Land & Development Corporation, 579 So.2d 183 (Fla. 5th DCA 1991), necessarily limited the scope of National's claim for full compensation. First, given the unique procedural circumstances of this case, we would be hesitant to apply Heathrow, in which the court addressed its attention to the appropriate application of the Federal Uniform Relocation Assistance and Real Property Acquisition Policies Act (Act) to the determination of the value of the billboard. Evidently, the Act has not been implicated in the instant case. In any event, Heathrow has been viewed as standing for the proposition that the "appraisal approach that maximizes the board's value is to be used, whichever method this may be." See Florida Eminent Domain Practice and Procedure, 4th Ed. section 9.45 (May 1992 Supplement). That article concluded: "Thus, the income approach may now be used." Id. Clearly, then, were it applicable, Heathrow would not necessarily have limited National's recovery to the cost of replacing the billboard.
Our holding today makes no comment on and specifically declines to address the appropriateness of the gross income multiplier method utilized, since DOT never objected to or moved to strike National's expert testimony utilizing that method. Rather, our reversal is predicated specifically on the fact that DOT concededly did not adduce competent evidence relevant to the issue for which the hearing was held, to wit: the value of National's leasehold interest in the condemned property. Consequently, since the only remaining evidence before the court, as produced by National, purported to establish that value, we must reverse the order of the trial court erroneously awarding an amount based solely on the replacement cost of the billboard, and remand the cause with directions that an order be entered directing DOT to pay to National the sum of $81,000.
REVERSED and REMANDED for further proceedings consistent with this opinion.
SMITH and WOLF, JJ., concur.
NOTES
[1] It should be noted that DOT's expert did not testify that the leasehold interest had nominal or no value; rather, he specifically stated that he had no opinion on the value of the leasehold. Of course, this should not be read to preclude a finding of little or no value to the leasehold where there is competent testimony or evidence to support such a finding.