STATE of Missouri, ex rel. MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Plaintiff,

v.

Eduard QUIKO, et al., Defendants.

DAN B. SAVAGE & SONS ADVERTISERS, INC., Appellant,

v.

James and Dorothy HASKETT, (on Exceptions of Haskett), Respondents.

DAN B. SAVAGE & SONS ADVERTISERS, INC., Appellant,

v.

Shelby BALLEW, (on Exceptions of Ballew), Respondent.

Nos. 20229, 20443.

Missouri Court of Appeals, Southern District, Division One.

May 29, 1996.

---

William H. May, Springfield, for appellant.

Janice Ellis McCain, Springfield, Greg Gibson, Nixa, for respondents.

Peter M. Donovan, Dist. Counsel, Springfield, John H. Gladden, Asst. Chief Counsel, Rich Tiemeyer, Chief Counsel, Jefferson City, Barry S. Zirulnik, Price & Zirulnik, Jackson, Mississippi, for amicus curiae Missouri Highway & Transp. Com'n.

GARRISON, Judge.

These are consolidated appeals in condemnation actions which involve the apportionment of commissioners' awards between ·landowners and Appellant which, as lessee, maintained advertising billboards (structures) on each of the involved tracts.

In September, 1994, the Missouri Highway and Transportation Commission (MHTC) filed a petition to condemn tracts of land adjacent to existing U.S. 65 north of Branson, Missouri. MHTC sought to acquire approximately 4.1 acres of a tract owned by James and Dorothy Haskett and 9.5 acres from Shelby Ballew. Pursuant to leases with the Hasketts and Ballew, Appellant maintained structures on each of the tracts being condemned.

Following an order of condemnation, court-appointed commissioners filed reports assessing the damages to the Haskett tract at $129,000, and $367,000 to the Ballew tract. After these amounts were paid into court, motions were filed seeking apportionment of each of the awards between the owners and Appellant. Following hearings on each of the motions, the trial court ordered that 69% of the award in the Haskett case be apportioned to the owners and 31% to Appellant. It also apportioned 90% of the Ballew award to her and 10% to Appellant. Appellant appeals from each of those judgments. We affirm.

■ Before addressing the merits of these appeals, we first consider Ballew's motion to dismiss the appeal in Case No. 20443. Ballew alleges that this court lacks jurisdiction because the order appealed from was interlocutory and did not dispose of all issues in the case. This ignores the fact that, pursuant to § 523.053, RSMo 1994, any party aggrieved by the trial court's ruling on a motion to distribute a commissioners' award "shall have the right of appeal therefrom, and the same shall be considered as a final judgment for such purposes." *See also City of Columbia v. Baurichter,* 684 S.W.2d 903, 905 (Mo.App. W.D.1985).

■ As we interpret the other basis alleged in Ballew's motion to dismiss, she contends that the appeal is without factual basis because findings of fact and conclusions of law were not requested or made by the trial court. She argues that under such circumstances all fact issues are considered as having been found in accordance with the result reached, and the judgment will be upheld on any reasonable theory supported by the evidence, citing Rule 73.01(a)(3) [1] and *Nail Boutique, Inc. v. Church,* 758 S.W.2d 206, 208 (Mo.App. S.D.1988). The fact that no findings of fact or conclusions of law were made, however, does not prevent all appellate review. *See Reinert v. Director of Revenue,* 894 S.W.2d 162, 164 (Mo.banc 1995); *Covington v. Director of Revenue,* 903 S.W.2d 673, 675 (Mo.App. E.D.1995).

Ballew's motion to dismiss is denied.

Review of another preliminary matter is necessary. Both Haskett and Ballew argue that the statement of facts and points relied on in Appellant's brief violate the mandates of Rule 84.04. They are correct in both respects, especially concerning the points relied on.

■ Three things are required by Rule 84.04(d) with respect to points relied on: (1) a statement of the action or ruling of the trial court about which the party complains; (2) a statement that specifies why the ruling was erroneous; and (3) a statement informing the appellate court wherein the evidence at trial supports the position the party asserts the trial court should have taken. *Bentlage v. Springgate,* 793 S.W.2d 228, 229 (Mo.App. S.D.1990). The "why" requirement contemplates a statement which ordinarily will closely approximate what appellant believes should have been the trial court's conclusion of law on the point being addressed. *Thummel v. King,* 570 S.W.2d 679, 685 (Mo.banc 1978).

■ All of Appellant's points relied on violate the "wherein" and "why" requirements. They essentially constitute nothing more than conclusions of claimed error. *See White v. White,* 846 S.W.2d 212, 214 (Mo.App. S.D. 1993). An insufficient point relied on preserves nothing for appellate review. *Bentlage v. Springgate,* 793 S.W.2d at 231.

■ We also note other violations of Rule 84.04. Appellant cites six cases following its fifth point relied on but refers to no case authority in the argument portion of the brief under that point. The absence of any explanation of how the authorities cited under the

---

**1.** All references to rules are to Missouri Rules of Civil Procedure (1996).

point support the contention of error invites us to become an advocate for Appellant in making that determination, a function which we cannot appropriately perform. *Mitchell v. Board of Educ.*, 913 S.W.2d 130, 135 (Mo. App. E.D.1996).

Appellant's sixth point is not supported by the citation of any authority, either under the point relied on or in the argument section of the brief. "When no authority is cited and no explanation is given, points relied on are deemed waived or abandoned." *State v. Conaway*, 912 S.W.2d 92, 95 (Mo.App. S.D. 1995). *See also Shiyr v. Pinckney*, 896 S.W.2d 69, 71 (Mo.App. S.D.1995); *Emery v. Emery*, 833 S.W.2d 453, 454–55 (Mo.App. S.D.1992); *Schnatzmeyer v. National Life Ins. Co.*, 791 S.W.2d 815, 822 (Mo.App. E.D. 1990).

██ Although not required to do so, we will undertake to review Appellant's first four points for plain error pursuant to Rule 84.13(c).[2] *See Gill v. Farm Bureau Life Ins. Co.*, 856 S.W.2d 96, 97 (Mo.App. S.D.1993). Under such circumstances, we are restricted to reviewing the argument portions of the brief to determine whether there has been plain error affecting substantial rights which, though not properly preserved, may have resulted in a manifest injustice or a miscarriage of justice. *Sertoma Bldg. Corp. v. Johnson*, 857 S.W.2d 858, 859 (Mo.App. S.D. 1993). We are mindful, however, that the plain error doctrine is rarely resorted to in civil cases. *Brown v. Mercantile Bank*, 820 S.W.2d 327, 335 (Mo.App. S.D.1991). We decline to review the fifth and sixth points, which are abandoned for the reasons stated above.

### POINT ONE

In its first point, Appellant complains that the trial court used depreciated replacement

cost of the structures to determine its interest in the awards. It argues that the court "committed reversible error by failing to utilize or even discuss Appellant's comparable sales data in reaching its apportionment decisions." The comparable sales data referred to were sales of other advertising structures from which Appellant's witness (Ms. Truitt) derived percentages expressed as multiples of gross advertising revenues, and which Appellant seeks to apply in the instant case in arriving at the market value of the structures.

██ If property taken by condemnation includes a leasehold interest and buildings or fixtures which, between the owner and lessee belong to the lessee, the lessee is entitled to be compensated for the market value of the leasehold and the building or fixture as a unit.[3] *State ex rel. Highway Comm'n v. Samborski*, 463 S.W.2d 896, 902 (Mo.1971). "While evidence of the value of the unexpired portion of the lease and the building separately is admissible as bearing upon the value of the two as a unit, the market value is what a buyer would be willing to pay for them as a unit and not the sum of the values of each considered separately." *Id.* (quoting from *Minneapolis–St. Paul M.A.C. v. Hedberg–Freidheim Co.*, 226 Minn. 282, 32 N.W.2d 569, 571–72 (1948)). In *Samborski*, the court identified the question as the price a buyer would be willing to pay for the leasehold with the building or structure, subject to the terms and conditions of the lease. 463 S.W.2d at 902.

In determining the value of the leasehold, the court said, in *Land Clearance for Redevelopment Corp. v. Doernhoefer*, 389 S.W.2d 780, 784 (Mo.1965):

> only upon a firm belief that it was erroneous. *Id.* On appeal, a trial court judgment is presumed valid, and the burden is on appellant to demonstrate that it is incorrect. *Delaney v. Gibson,* 639 S.W.2d 601, 604 (Mo.banc 1982); *Zimmer v. Zimmer,* 862 S.W.2d 355, 364 (Mo.App. S.D. 1993).

2. Ordinarily the standard of review set out in *Murphy v. Carron,* 536 S.W.2d 30, 31 (Mo.banc 1976), is applicable to review of an order of distribution (apportionment) in a condemnation case. *St. Louis County v. Boatmen's Trust Co.,* 857 S.W.2d 453, 457 (Mo.App. E.D.1993). Under that standard, we are to sustain the action of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.* We should utilize our power to set aside a judgment with caution and

3. In both the Haskett and Ballew cases, the lessees permitted the lessee to remove the signs.

[T]he value of the leasehold should be determined from the testimony of qualified expert witnesses as that value which a buyer under no compulsion to purchase the tenancy would pay to a seller under no compulsion to sell, taking into consideration the period of the lease yet to run, including the unexercised right of renewal, the favorable and unfavorable factors of the leasehold estate, the location, type and construction of the building, the business of the tenant, comparable properties in similar neighborhoods, present market conditions and future market trends, and all other material factors that would enter into the determination of the reasonable market value of the property. The bonus value, sometimes referred to as the leasehold savings or profit, is the difference between the economic rental and the contract rental. The economic rental is the actual market value of the use and occupancy.

The *Doernhoefer* principle has been interpreted as entitling a lessee to the "bonus value" the lessee has under the lease, which is the difference between the economic (or market) rental and the contract rental specified in the lease. *Land Clearance for Redevelopment Auth. v. W.F. Coen & Co.*, 773 S.W.2d 465, 471 (Mo.App. W.D.1989). *See also Osborn v. Home Ins. Co.*, 914 S.W.2d 35, 37–38 (Mo.App. E.D.1996).

■ In valuing a billboard structure which belonged to a lessee but which passed to the condemning authority, it has been said that the lessee is entitled to be paid the reasonable market value of the structure. *State ex rel. Highway Comm'n v. Volk*, 611 S.W.2d 255, 258 (Mo.App. E.D.1980). The court in *Volk* cited, with approval, *City of Ladue v. St. Louis Pub. Serv. Co.*, 168 S.W.2d 966, 970 (Mo.App. E.D.1943), for the proposition that the tenant is entitled to "the market value of the structures ascertained on the basis of what they were worth for the use to which they were employed as they stood upon the land." 611 S.W.2d at 259.

### HASKETT CASE

■ In its order in the Haskett case, the trial court apportioned 69% of the award to the Hasketts and 31% to Appellant. In doing so it explained its reasoning, paraphrased by us as follows:

(1.) The value of the leasehold should be ascertained by the "bonus value" test. Although there was evidence of the contract rental actually being paid by Appellant, there was no evidence of the market rental. The court concluded that there was no bonus value in the lease in question.

(2.) In valuing the structures themselves, the court referred to *State ex rel. Highway Comm'n v. Volk*, *supra*, which it said requires that the lessee receive the portion of the award equalling the value of the structures. In doing so, it noted that the report of Appellant's expert (Ms. Truitt), admitted in evidence, included a replacement cost for the structures of $71,500 and applied a 25% depreciation factor. It concluded that, on a depreciated replacement cost basis, the structures had a value of $53,625.

(3.) It concluded that the only evidence of the difference between a before and after value for the entire property was that introduced through the testimony of the Hasketts' expert, to wit: $173,000. Because $53,625 is 31% of $173,000, the court apportioned 31% of the award to Appellant and 69% to Haskett.

Appellant does not contend in this point that the court erred in finding that there was no evidence of a bonus value in the lease and in failing to assign a value to it on that basis. Rather, it contends that the trial court should have applied its evidence of comparable sales in arriving at the value of the structures instead of a depreciated replacement cost. It concludes that its structures should have been valued based on the testimony of its expert, Ms. Truitt, and its owner, Mr. McMurtrey, who each used a multiple of revenues in arriving at an opinion of value.

Ms. Truitt's opinion was that the appropriate method of valuing the structures was comparable sales. In connection with her analysis, she relied on five sales. Those sales involved from one to eighty-two structures located in Lawrence and Jasper Counties, St. Louis County, the City of Joplin, and in Oklahoma. From each, she arrived at a

"gross income multiplier" by referring to the number of structures sold, the gross revenue from the structures involved in each sale, and the sale price. She concluded that those sales were for amounts ranging from 3–1/2 to 4–1/2 times the gross revenue of the structures sold.

In the instant case, the two structures had gross annual revenues of $24,720. Ms. Truitt concluded, however, that the "market" rental value of the structures (what the structures "should" be renting for) was $36,000 per year. By applying a multiple of 3–1/2 to the "market" rental of the structures, she arrived at her opinion that the structures had a value of $126,000. Mr. McMurtrey testified that based on the multiple of income theory, the structures had a value of $125,000 to $150,-000.

■ Ms. Truitt referred to this method of evaluation as the sales-comparison approach. "Comparable sales" are described as voluntary sales of other similar property made in the same general vicinity which are close in time to the date of taking. *Del–Mar Redevelopment Corp. v. Associated Garages, Inc.,* 726 S.W.2d 866, 869 (Mo.App. E.D.1987). In the instant case, there was no testimony that any of the structures or locations involved in the "comparable sales" were in fact comparable to those involved in the instant case.

Additionally, the date of taking in this case was January 5, 1995, which is the applicable date for valuation of property taken in a condemnation action. *See Western Robidoux Printing & Lithographing Co. v. State Highway Comm'n,* 498 S.W.2d 745, 748 (Mo.1973); *State ex rel. Highway & Transp. Comm'n v. Edelen,* 872 S.W.2d 551, 557–58 (Mo.App. E.D.1994). Appellant's lease of the Haskett property called for a term of five years from May 1, 1992 to May 1, 1997. As of the date of taking, there was slightly less than two years four months remaining, yet the testimony of Ms. Truitt and Mr. McMurtrey relied on income multiples of annual revenues of 3–1/2 or more. This effectively valued the structures as if they would be on the property for at least 3–1/2 more years.

Ms. Truitt testified that her opinion was based on an assumption that the lease would be extended because most leases are, in fact, renewed. The lease did provide for automatic renewals of five years each, but it also permitted the Hasketts to terminate it by giving thirty days' notice prior to the end of the term. Mrs. Haskett testified that it was doubtful that they would have permitted the lease to be extended when its existing term expired.[4] In *Millhouse v. Drainage Dist. No. 48,* 304 S.W.2d 54, 58 (Mo.App. S.D. 1957), the court noted that the "expectation" of a lease renewal, even based on evidence that all parties were satisfied with the relationship and were likely to renew, did not create an "interest entitled to constitutional protection."

Other states have considered the approach espoused by Appellant. In *Whiteco Indus., Inc. v. City of Tucson,* 168 Ariz. 257, 812 P.2d 1075, 1079 (App.1990), the court said that evidence of the value of billboards established by proving "four times gross income without any regard for the existence, length or terms of the leases, was incompetent and legally insufficient...." In *State Dep't of Transp. & Dev. v. Chachere,* 574 So.2d 1306, 1311 (La.Ct.App.1991), the court rejected the use of a gross income multiplier in valuing billboards even though, as suggested by Appellant in the instant case, it may be an accepted approach which is acted upon within the advertising industry.

■ Appellant's evidence also indicated that using a multiple of gross income in arriving at a value for the structures effectively incorporates a factor for lost business income. Missouri has generally not permitted consideration of lost business profits in valuing property taken by condemnation. *See City of St. Louis v. Union Quarry & Constr. Co.,* 394 S.W.2d 300, 306 (Mo.1965); *State ex rel. Highway & Transp. Comm'n v. Musterman,* 856 S.W.2d 121, 123 (Mo.App. E.D.1993); *Land Clearance for Redevelopment Auth. v. W.F. Coen & Co.,* 773 S.W.2d at 467–68. Exceptions have been found

---

4. If the actual annual revenues from these structures were multiplied by 2.33 (the approximate time remaining on the lease), the result would be $57,597.60. The trial court awarded Appellant $53,625.

where there was a total taking of the land and the business was inextricably related and connected with the land so that an appropriation of the land constituted an appropriation of the business. *State ex rel. Highway Comm'n v. Musterman*, 856 S.W.2d at 123.

In the instant case, assuming without deciding that the taking of the two structures would constitute the equivalent of a total taking, we are directed to no evidence supporting the premise that the structures were inextricably connected with this land. There was no showing that other land was unavailable for these structures or that they were of such a nature that these particular locations were the only feasible places for them. Under these circumstances, Appellant has not demonstrated that consideration of business revenues would have been appropriate.

In *In re Urban Redevelopment Auth.*, 440 Pa. 321, 272 A.2d 163, 165 (1970), there was no evidence that two leases for billboards had a "bonus value." The court concluded that evidence of income flow from the leased premises was irrelevant in determining compensation to be awarded to the owner of the billboards. *Id.* It said:

> [A]t least in theory and hopefully in practice, [the lessee] could obtain a lease of a comparable location for the same amount of rent, construct its billboards at that location with the award for the replacement value of the billboards and realize an identical income flow. Other than the loss of the billboards themselves, [the lessee] has not been legally damaged by this taking.

*Id.*

In its brief, Appellant refers to several cases from foreign jurisdictions which allegedly support its theory that the gross income multiplier should be applied. In several instances, there are no citations furnished with the cases. One of those cases, *National Advertising Co. v. State Dep't of Transp.*, 611 So.2d 566 (Fla.Dist.Ct.App.1992), was cited for the proposition that the court "held market value was four times annual billing." The court, however, in reversing a judgment based only on replacement cost of a billboard, noted that under the evidence the lessee could not relocate the sign because of a local ordinance, but said: "Our holding today makes no comment on and specifically declines to address the appropriateness of the gross income multiplier method utilized, since DOT never objected to or moved to strike National's expert testimony utilizing that method." *Id.* at 570.

In another of the cases referred to by Appellant, *Department of Transp. v. Heathrow Land & Dev. Corp.*, 579 So.2d 183, 184 (Fla.Dist.Ct.App.1991), the court concluded that the Federal Uniform Relocation Assistance and Real Property Acquisition Policies Act, as amended by the Uniform Relocation Act Amendments of 1987, applied to require the making of good faith estimates of value which must be paid into court before removing the billboard. In Missouri, however, it has been held that the federal act does not apply to apportionment proceedings. *State ex rel. Highway Comm'n v. Volk*, 611 S.W.2d at 257.

Finally, Appellant cites *City of Norton Shores v. Whiteco Metrocom*, 205 Mich.App. 659, 517 N.W.2d 872, 873 (1994), saying that the court held that "comparable sales data based on a multiple of income was admissible in condemnation and was best indication of fair market value." In fact, the court merely held that the trial court erred in excluding evidence of appraisals of the property's market value based on the income capitalization method. *Id.* We note, however, that the court also said that "market value estimates, based on income, that do not take into account the finite terms of the leases in question might not be admissible because they lack relevance . . . or because the probative value is substantially outweighed by the danger of unfair prejudice . . . ." *Id.* at n. 3. In the instant case, the testimony on which Appellant relies effectively ignored the terms of the lease.

We also note that the "revenues" used by Ms. Truitt to arrive at the market value of the subject structures were what she believed to be the "market rental" for the structures and not the amounts actually being received. There was no testimony that this was the customary or generally accepted method of calculating such damage or that

the same method was used in arriving at the income multiples for the "comparable sales." To the contrary, Ms. Truitt's report indicates that with the possible exception of one sale of a vacant sign where rentals were "estimated," she used the actual rental income on the other sales in arriving at the "gross income multiplier" for each.

 Finally, we note that evidence of comparable sales is not the only method of establishing fair market value. Cost of replacement minus depreciation is also an accepted method of determining fair market value of condemned property. *Del–Mar Redevelopment Corp. v. Associated Garages, Inc.*, 726 S.W.2d at 869.

We are unable to conclude, under the facts and circumstances of this particular case, that the trial court committed plain error in apportioning the award. Point one is denied as it relates to the Haskett case.

### BALLEW CASE

The Ballew case involved three structures and a lease that was to expire on November 15, 1995, slightly over ten months after the date of taking. The commissioners made an award of $367,000, and the trial court found that Ballew was entitled to 90% ($330,300) and Appellant 10% ($36,700). No findings of fact or conclusions of law were requested or given, and the court did not otherwise explain its reasons for apportioning the award as it did.

Where no specific findings are made, all fact issues shall be considered as having been found in accordance with the result reached. Rule 73.01(a)(3). In the instant case, Appellant does not contend that the apportionment lacked evidentiary support, only that the trial court incorrectly applied the law in not utilizing the sales-comparison approach used by its appraiser, Ms. Truitt, including the income multipliers. As indicated in our discussion of the Haskett case under this point, we are unable to conclude that the trial court

committed plain error in applying the law as it did.[5]

Point one is denied.

### POINT TWO

As we interpret Appellant's second point, it contends that the trial court erred in admitting and considering the testimony of Floyd Cooper, an expert called by the landowner in both the Haskett and Ballew cases.

In the Ballew case, Appellant argues that Mr. Cooper's testimony about the replacement cost of the structures was not proper rebuttal evidence (it was offered after Appellant had presented its case), and that he was not qualified as an expert since his opinion concerning replacement cost was based on a conversation with another individual.

Initially, we note that Appellant has violated provisions of Rule 84.04 other than (d) concerning the points relied on. Its argument under this point contains only one page reference to the record on appeal. Rule 84.04(h) requires that "[a]ll statements of fact and *argument* shall have specific page references to the legal file or the transcript." (Emphasis added.) Accordingly, we are left to sort through the transcript in an attempt to identify the portions thereof applicable to this point. In doing so, we have found that Appellant's argument that it moved to exclude Mr. Cooper's testimony in the Ballew case "on the basis that he had no knowledge superior to the average individual regarding replacement costs or market value of a billboard" is factually inaccurate and not supported by the record.

 Complaints concerning testimony to which no objection is made at trial are not preserved for appeal. *Wulfing v. Kansas City S. Indus., Inc.*, 842 S.W.2d 133, 159 (Mo.App. W.D.1992). In neither of the instant cases did Appellant object to Mr. Cooper's testimony on the basis that he was not qualified to express expert opinions. Under such circumstances, the objection is waived. *Seabaugh v. Milde Farms, Inc.*, 816 S.W.2d 202, 209 (Mo.banc 1991).

---

5. In Ballew, Ms. Truitt did express an opinion that some of the other structures involved in the sales relied on by her were "comparable" to the structures in question. This does not change our conclusion that plain error has not been demonstrated.

In Ballew, Appellant also argues that the court erred in allowing Mr. Cooper to testify in rebuttal. The trial court has discretion to permit rebuttal evidence, even when it could have been introduced in the case in chief. *Stemmler v. Crutcher*, 719 S.W.2d 918, 921–22 (Mo.App. E.D.1986). Appellant's argument in this respect is not accompanied by a showing of prejudice.

In the Haskett case, Appellant argues that Mr. Cooper testified about the damage sustained by the Hasketts as a result of the taking, but that his opinion assigned no value to the structures themselves. This fact was established on cross-examination. The trial court indicated by its comments, however, that it understood Mr. Cooper's testimony to be that his reason for not assigning value to the structures was his belief that Appellant would be tearing them down and moving them to another location. Appellant's counsel then said, "I'd like to discuss a motion in limine to exclude this testimony because it's obvious that this does not include all of the interests of Savage Signs." The court responded, in denying the request, that it had "heard his opinions and his bases for his opinions."

The admission or exclusion of evidence in condemnation cases is within the discretion of the trial court, and errors will not result in reversal unless there is a substantial or glaring injustice. *State ex rel. Highway & Transp. Comm'n v. Edelen*, 872 S.W.2d at 555. Additionally, in reviewing the admissibility of evidence in a court-tried case, we are mindful that the trial court is allowed wide latitude in the admission of evidence because it is presumed that it will not give weight to that evidence which is incompetent. *Blackburn v. Richardson*, 849 S.W.2d 281, 291 (Mo.App. S.D.1993). It is, therefore, difficult to base reversible error on the erroneous admission of evidence in a court-tried case. *Id.*

Appellant also argues that Mr. Cooper used the wrong test concerning the bonus value of the lease. When Mr. Cooper testified about the concept of a bonus value for the lease, Appellant made no objection. It is, therefore, deemed to have waived complaint

about it. *Seabaugh v. Milde Farms, Inc.*, 816 S.W.2d at 209.

We do not find, from the record before us, and based on objections actually made, that plain error occurred. The second point is denied.

## POINT THREE

In its third point, Appellant complains that the trial court erred in admitting the testimony of Ballew's expert witness, Mr. Siecgrist. From its one-half page argument in support of this point, we glean that Appellant contends that Mr. Siecgrist's opinion should have been excluded because it also assigned no value to the structures. Appellant, however, failed to object to this testimony or request that it be stricken. Accordingly, as discussed in the previous point, Appellant waived the claim of error it now argues. Additionally, there were no findings of fact requested or made by the trial court. Under such circumstances, there is no basis to assert on appeal that any specific or implied finding constitutes error. *Brooks v. Brockman*, 608 S.W.2d 566, 567 (Mo.App. S.D.1980). We discern no plain error as a result of the matter raised in this point. It is, therefore, denied.

## POINT FOUR

In the fourth point, Appellant complains that the trial court admitted the testimony of Ballew's expert witness, Mr. Campbell, who testified about the replacement costs of the structures. Appellant contends that Mr. Campbell did not have the qualifications to express an expert opinion on the subject and that his testimony was contradictory.

Appellant made several objections to Mr. Campbell's qualifications as an expert until Ballew introduced an exhibit containing his qualifications. It was introduced with no objection from Appellant, whose counsel also said, "I'd like to continue my objection to his qualifications as an expert and his testifying regarding any values." No ruling in response to that statement was requested or given by the trial court. Thereafter, Appellant made no objection to Mr. Campbell's

qualifications to render opinions concerning the cost of reproducing the structures.

Even if there was a continuing objection to his qualifications (a matter which we do not decide), the trial court made no findings of fact, with the result that there is no indication that it relied on Mr. Campbell's testimony or that it adversely affected the outcome from Appellant's perspective. Accordingly, there is no basis to assert on appeal that any implied finding constitutes error. *Brooks v. Brockman*, 608 S.W.2d at 567. Point four is denied.

The judgment in each case is affirmed.

MONTGOMERY, P.J., and BARNEY, J., concur.