812 P.2d 1075

**WHITECO INDUSTRIES, INC., an Indiana corporation, Plaintiff/Appellee,**

**v.**

**CITY OF TUCSON, a municipal corporation, Defendant/Appellant.**

**No. 2 CA–CV 90–0156.**

Court of Appeals of Arizona, Division 2, Department A.

Dec. 20, 1990.

Review Denied July 16, 1991.

---

**2.** Charles Dickens, *Oliver Twist,* Chapter 51.

Lewis and Roca by Susan M. Freeman, John N. Iurino and Gary Dukarich, Tucson, for plaintiff/appellee.

Frederick S. Dean, City Atty. by Tobin Rosen, Tucson, for defendant/appellant.

## OPINION

LACAGNINA, Judge.

The City of Tucson appeals from a condemnation judgment for damages in favor of a billboard owner in the amount of $67,200 plus $20,000 attorneys' fees, as the value of two billboards removed from land acquired by the city in furtherance of a roadway project. The city argues that because the billboard owner's leases had expired, it had no legal right to maintain the billboards on the property, and therefore had no compensable legal interest. We agree with the city and reverse the judgment of the trial court.

## FACTS

In 1982, the city began a federally-funded road project known as the Kino Corridor. Whiteco Industries maintained two billboards on one of the streets in a commercial/industrial area which intersected with the roadway. As part of the project, the city purchased two parcels of property upon which Whiteco maintained the billboards by virtue of leases it had acquired from the previous owner of the billboards. The leases provided for termination in the event the property was sold and the lessor was given 30 days prior written notice. After the city purchased the property and gave the required notice, it allowed Whiteco to maintain the billboards on the property by letter agreement providing for a month-to-month tenancy until the roadway construction began. Whiteco made timely monthly payments to the city until 1985 when the city demanded removal. Whiteco removed the billboards and sued the city for inverse condemnation under state and federal law.

The trial court made findings of fact and conclusions of law and concluded in its judgment that "plaintiff has sustained its burden and shown a compensable taking in this case.... [t]he subject billboard leases would still be in effect but for the City's acquisition of the subject property (which would have occurred by condemnation had the lessor not chosen to sell)." The trial court adopted the testimony of Whiteco's expert, Mr. Johnson, and used a gross rent multiplier to arrive at the value of the taking at $67,200 plus statutory interest from July 1, 1985, plus $20,000 attorneys' fees.

## TERMINATED LEASEHOLD INTEREST NOT COMPENSABLE

The trial court's judgment based upon its finding that the leases would be in effect but for the city's acquisition of the underlying property is contrary to the evidence. The leases by their own terms were terminated when the property was purchased by the city, leaving Whiteco with no legal compensable interest of any kind. *Ackerley Communications v. Mt. Hood Community College*, 51 Or.App. 801, 627 P.2d 487 (1981). The trial court's finding that the leases would still be in effect and therefore compensable was in part based on Whiteco's closing argument at trial.

THE COURT: If I understand, your predicate assumption is that the billboard leases in question would have been renewed, but for the acquisition of the subject—the underlying properties by the City; and that those acquisitions were in the course of their need for right-of-way associated with the Kino Corridor Project.

MR. IURINO: I have two responses to the Court's question on that. The first is that, yes, that is the predicate.

The legal interest which Whiteco owned is shown by its leases admitted in evidence. The damages for loss of a leasehold interest upon condemnation is limited to compensation for the unexpired portion of the tenancy, if any. Whiteco's leases had expired and any expectancy of renewal and the trial court's finding that the leases would be in effect except for the taking is noncompensable, even if true. *United*

*States v. Petty Motor Company,* 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729 (1946); *State ex rel. v. Gannett Outdoor Company of Arizona,* 164 Ariz. 578, 795 P.2d 221 (App.1990); *Ackerley Communications v. Mt. Hood Community College, supra.*

■ Whiteco cites *Almota Farmers Elevator & Warehouse Co. v. United States,* 409 U.S. 470, 93 S.Ct. 791, 35 L.Ed.2d 1 (1973), as support for the judgment. We do not find it persuasive. The improvements involved in *Almota* were buildings and equipment used in the grain elevator business. The lessor railroad benefited from the leases because it supported grain shipments on its railroad; therefore, the fact of renewal was important. The grain elevators were fixtures, not removable personal property billboards and the lessor and lessee would have continued their relationship except for the taking; therefore, the taker had to pay for the value of the nonremovable fixtures as it related to the fact of continued renewal since 1919. The *Almota* decision is a narrow exception to the general rule stated in *United States v. Petty.* Subsequent federal decisions recognize the narrow exception but follow the general rule that the interest of a tenant at will or at sufferance upon condemned realty is not a compensable property interest. *United States v. 57.09 Acres of Land,* 757 F.2d 1025 (9th Cir.1985); *Windward Partners v. Ariyoshi,* 693 F.2d 928 (9th Cir. 1982). We adopt the rationale of the majority opinion in *Gannett:*

> The dissent asserts that this court should allow compensation for the market value of an interest which is clearly not a legally cognizable property interest. As such the dissent would adopt an entirely novel and unsupported position allowing compensation for any market value despite the complete absence of a legal property interest.

164 Ariz. at 582, 795 P.2d at 225.

In view of the trial court's statement in its judgment, we cannot agree with Whiteco that the trial court awarded damages only for the value of the billboards and not for its leasehold interest. There was no evidence of any "nuts and bolts" value of the billboards apart from their ability to generate income, and the income generated was dependent upon the billboards' location on realty. Without a legal right by virtue of ownership or lease of realty to maintain the billboards, no income can be earned. The only evidence of value in the trial court was based on four times gross income. The expert testified that he did not consider the underlying leases when he determined the value of the billboards because billboard signs are not usually sold one at a time, but rather as a part of a package for the purchase of an entire sign company. He stated:

> Q. In valuing outdoor advertising structures, Mr. Johnson, is it critical to determine the length of term of the underlying lease in arriving at a value figure?
>
> A. Typically, the—the poster panels are sold as part of an operating plant. The operating plant consists of multiple signs, some of which are on long-term lease, some of which are on year to year renewal extensions and some of which are on a month to month basis.
>
> It is a composite of many different types of signs so that the specific—if there's to be a taking, specific term of an individual sign in that sense is, in my opinion, irrelevant.
>
> Q. Why is that, sir?
>
> A. Because it is not typical of the marketplace. One does not typically sell a specific sign with a predetermined lease term to another. It's sold as part of a package.
>
> In a sense, if there's a taking of an individual sign, it would be like a partial taking in a condemnation case, where the total plant would represent the whole and the specific sign would represent a part of the whole; and, in condemnation cases, the appraiser looks at the part taken as a part of the whole. So, in that sense, the specifics of an individual sign somewhat fade into insignificance when one considers the entire market structure.

The expert later admitted in his testimony that if the leases had expired, there was no

way to determine the value of the billboards.

Q. Did you look at the underlying leases for these Whiteco billboards, Mr. Johnson?

A. These two?

Q. The two that you appraised.

A. Yes, I did, yes.

Q. And weren't those five-year leases, commencing in 1977, and ending in 1982?

A. Yes.

Q. All right.

Now, given that, if you'd used the income stream approach and discounted it to present value, you'd have a value of zero for those billboards, because the leases would have expired, isn't that correct?

\* \* \* \* \* \*

THE WITNESS: If the lease had expired before the signs were taken down, there would be no determinable value of any type.

We conclude that the only evidence of market value of the two specific billboards (not as part of the sale of an entire company) whose leases had expired was zero.

The facts of *City of Scottsdale v. Eller Outdoor Advertising Co. of Arizona,* 119 Ariz. 86, 579 P.2d 590 (App.1978), differ from this case in three major respects: (1) Eller's leases had not terminated prior to taking, (2) prior litigation not appealed was res judicata on the issue of a compensable loss, and (3) the taking by the city was pursuant to regulations adopted to eliminate all billboards from within the city limits. Nevertheless, it is instructive on the issue of the loss by the taking and the measure of damages. Judge Eubank, in his concurring opinion, noted:

Since this case is to be retried, I believe it is necessary to point out several problems that I see. First, 42 U.S.C. § 4601 et seq. does not change the nature of the estate being condemned: a leasehold estate. Under our law, the only market value to a lessee such as Eller in the event of condemnation is the economic value of the rental over and above the actual rental paid reduced to present value. *See County of Maricopa v. Shell Oil Co.,* 84 Ariz. 325, 327 P.2d 1005 (1958). This has been termed "bonus value." *In determining this value, the length of time that the lease has to run, the rent to be paid, and the various obligations of the parties under the lease are relevant to the price that a willing, informed buyer and a willing, informed seller of the lessee's interest would pay for the leasehold interest.* This price is fair market value or just compensation which is required by Article 2, Section 17, Arizona Constitution, 1 A.R.S.

Second, the market value of Eller's leasehold is complicated because 42 U.S.C. § 4652 requires the payment of "Just Compensation PLUS." This is just compensation plus an additional amount of compensation: either the amount the billboards enhance the value of the real property, or, if greater, the value of the structure in place, notwithstanding the obligation under the lease to remove the structures at the expiration of the lease. 42 U.S.C. § 4652. I believe this means that just compensation will include either the bonus value of the lease, if any, plus enhancement value, or the bonus value plus purchase of the billboards, whichever is greater. *See U.S. v. 40.00 Acres of Land, More or Less,* 427 F.Supp. 434 (W.D.Mo.1976).

Third, I agree that the income approach to value is proper evidence of value. However, Eller's approach, set out in the main opinion, is not properly the income approach as I understand it. *The income approach applied to the billboards would be the income produced by the six billboards, less rent and expenses, capitalized and then adjusted for the remaining term of the lease.* The difference between this value and the rent would be the bonus value, if any. Eller's approach to value consisted of its personal business loss due to the taking of six billboards out of the Company's inventory of billboards. This is a form of severance damage to Eller's going business; it is a form of business

loss to appellee's going concern value; it treats different estates in property as equal, and in particular treats the leasehold as the real property interest. This cannot be done because the real property interest is owned by Scottsdale.

119 Ariz. at 97, 579 P.2d at 598 (emphasis added). Whiteco's evidence, consisting solely of proving four times gross income without any regard for the existence, length or terms of the leases, was incompetent and legally insufficient to support the judgment of the trial court for damages.

In light of our opinion, we need not address Whiteco's cross-appeal alleging the trial court's failure to award its costs was error. We reverse.

LIVERMORE, P.J., and HATHAWAY, J., concur.