LAMAR ADVANTAGE G.P. COMPANY, L.L.C., Plaintiff-Appellant, v. THE ADDISON PARK DISTRICT *et al.*, Defendants-Appellees.

Second District    No. 2—03—1229

Opinion filed December 13, 2004.

Sanford M. Stein, Richard M. Stock, Laura C. Scotellaro, and John A. Simon, all of Gardner, Carton & Douglas, L.L.P., of Chicago, for appellant.

Mary E. Dickson, Patrick K. Bond, and Keith E. Letsche, all of Bond, Dickson & Associates, P.C., of Wheaton, for appellee Addison Park District.

Larry J. Chilton, Theodore C. Hadley, Joseph R. Vallort, and Angela Larimer, all of Chilton, Yambert, Porter & Young, L.L.P., of Chicago, for appellee Village of Addison.

JUSTICE GILLERAN JOHNSON delivered the opinion of the court:

In 1987, the plaintiff, Lamar Advantage G.P. Company, L.L.C., entered into a 15-year lease agreement for the purposes of erecting and maintaining a billboard on property located in Addison. In October 1998, the defendant Addison Park District (the District) acquired the property, subject to the lease, from the lessor. In July 1999, the District and the defendant the Village of Addison (the Village) entered into an agreement that annexed the property into the Village. The annexation agreement indicated that the District would terminate the plaintiff's billboard lease at the end of its term. The lease terminated on May 18, 2002, and was not renewed. On July 3, 2002, the plaintiff filed an amended complaint against the District and the Village, arguing that it had a valid property interest in the expectation of the renewal of its lease and that the nonrenewal of the lease resulted in the taking of its property without payment of just compensation. The District and the Village filed motions to dismiss the plaintiff's amended complaint pursuant to section 2—615 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—615 (West 2002)). On September 30, 2003, the circuit court of Du Page County dismissed the plaintiff's complaint with prejudice. The plaintiff appeals from this order. We affirm.

The plaintiff's complaint contained the following allegations. The

plaintiff is in the business of maintaining outdoor advertising signs and leasing or donating space to commercial and noncommercial advertisers. The District is an Illinois special district located in Du Page County. The Village is an Illinois municipal corporation, also located in Du Page County.

In 1986, the plaintiff's predecessor entered into a 15-year lease agreement for the purpose of erecting and maintaining a billboard on what was then known as the "Dog N Suds" property (the property). At the time the lease was executed, the property was located in unincorporated Du Page County, outside the boundaries of the Village. The terms of the lease provided that the lease would remain in full force and effect for 15 years after the completion date of the billboard. The billboard was completed on May 18, 1987. The lease further provided that the term of the lease was to automatically renew for subsequent 15-year periods, unless either the lessor or the lessee notified the other in writing within 60 days prior to the expiration of any such period that it was terminating the lease. On September 29, 1998, the District acquired the property from the lessor, subject to the plaintiff's existing billboard lease. The initial term of the lease was due to expire on May 18, 2002.

After the District acquired the property, the District and the plaintiff entered into extensive negotiations to extend the lease for a second term. As part of those negotiations, the plaintiff alleged that it made several proposals to the District to extend the lease under terms more favorable to the District. However, the plaintiff alleged that the District rejected each of its proposals because the Village planned to annex the District's property and condition the annexation on the removal of the plaintiff's billboard. On October 17, 1998, the District informed the plaintiff that although it was interested in renewing the lease, the Village was demanding that the billboard be removed.

On December 16, 1998, the Village advised the District that it was interested in annexing the property. The Village manager, Joseph Block, sent a letter to the District, stating:

"[T]he Village is very interested in annexation of the [property] into the Village of Addison. First and foremost we would like to see all Park District property within the corporate limits of the Village. In this case, we are very interested to see the billboard removed at the end of its current four year lease."

On January 25, 1999, the District sent a letter to the plaintiff. The letter indicated that the District was interested in renewing the lease and planned to ask the Village to reconsider its demand that the billboard be removed.

On June 1, 1999, the District petitioned the Village to annex the

property. On July 19, 1999, the Village and the District entered into an agreement to annex the property. Paragraph four of the agreement expressly stated that the District had agreed to remove the existing billboard upon the expiration of the current lease term. On July 20, 1999, the Village approved the agreement through the passage of ordinance No. 0—99—80. On August 2, 1999, the Village passed ordinance No. 0—99—86 annexing the property into the Village. The Village also passed ordinance No. 0—99—87 rezoning the property to residential, R—1 zoning district, with a special use for a golf course, a driving range, and related public recreational uses.

On April 20, 2001, more than one year before the lease was to expire, the District informed the plaintiff, in writing, that it was providing formal notification pursuant to the lease agreement that the lease would not be renewed upon the expiration of its term. On January 2, 2002, the District again gave the plaintiff formal written notice of the lease termination and requested that the plaintiff advise the District as to when the billboard would be removed.

On May 8, 2002, the District advised the plaintiff that if the billboard was not removed on or before May 18, 2002, the lease expiration date, the District would remove the billboard and charge the plaintiff for the removal costs. The plaintiff refused to confirm that it would remove the sign and instead informed the District that it was considering taking immediate and emergency action to protect its rights and prevent the demolition of the billboard. Thereafter, the District approved a contract for removal of the billboard.

On May 17, 2002, the plaintiff filed a verified complaint for injunctive, declaratory, and monetary relief against the District, seeking to enjoin the District from removing the billboard without the payment of just compensation. On May 23, 2002, the plaintiff filed a motion for a temporary restraining order and a preliminary injunction. The trial court denied the motion. On or about June 4, 2002, the plaintiff removed the billboard at its own expense. The plaintiff was subsequently granted leave to file an amended complaint joining the Village.

In its amended complaint, the plaintiff alleged seven counts. In count I, the plaintiff alleged a cause of action for inverse condemnation under the Illinois Eminent Domain Act (735 ILCS 5/7—101 (West 2002)). The plaintiff claimed that Village ordinance No. 0—99—80 required the removal of the billboard and violated the Eminent Domain Act because private property cannot be taken without payment of just compensation. In counts II through V, the plaintiff alleged violations of its due process and equal protection rights under the United States Constitution (U.S. Const., amends. V, XIV) and the Il-

linois Constitution (Ill. Const. 1970, art. I, §§ 2, 15). The plaintiff argued that terminating its lease and requiring the removal of its billboard constituted the taking of its private property without payment of just compensation.

In count VI, the plaintiff alleged a violation of section 1983 of the Civil Rights Act of 1964 (42 U.S.C. § 1983 (West 2002)). Pursuant to section 1983 of the Civil Rights Act, any person who, under color of any statute or ordinance, subjects any citizen to the deprivation of any rights secured by law shall be liable to the injured party. The plaintiff argued that the Village and the District are liable under section 1983 because the annexation agreement, conditioned on the termination of the billboard lease, was an illegal attempt to usurp the plaintiff's constitutional right to just compensation under the United States and Illinois Constitutions as well as under the Eminent Domain Act. In count VII, the plaintiff alleged a cause of action against the Village for tortious interference with a prospective business relationship. The plaintiff argued that, but for the Village's interference, the plaintiff had a reasonable expectation that the District would renew its lease for another term.

Finally, in count VIII, the plaintiff alleged a cause of action for civil conspiracy. The plaintiff alleged that the Village and the District participated in a scheme that resulted in the taking of the plaintiff's property without the payment of just compensation. The District and the Village filed motions to dismiss the plaintiff's amended complaint pursuant to section 2—615 of the Code (735 ILCS 5/2—615 (West 2002)). On September 30, 2003, following a hearing, the trial court granted both motions. In so ruling, the trial court noted that it found *Patrick Media Group, Inc. v. Du Page Water Comm'n*, 258 Ill. App. 3d 1068 (1994), controlling. Additionally, it noted that it found *Almota Farmers Elevator & Warehouse Co. v. United States*, 409 U.S. 470, 35 L. Ed. 2d 1, 93 S. Ct. 791 (1973), upon which the plaintiff relied, to be distinguishable. The trial court stated that "[t]here is not a lifetime or a perpetuity, a right to extend a lease, whether the government is the landowner or a private party is the landowner." Thereafter, the plaintiff filed a timely notice of appeal.

On appeal, the plaintiff argues that the trial court erred in dismissing its complaint because it (1) suffered the deprivation of a valid property interest; (2) stated a valid claim under the Eminent Domain Act; and (3) stated a valid claim for civil conspiracy. A section 2—615 motion challenges the legal sufficiency of the complaint. *Chandler v. Illinois Central R.R. Co.*, 207 Ill. 2d 331, 348 (2003). In reviewing a section 2—615 dismissal, a reviewing court must decide whether the allegations, when construed in the light most favorable to the plaintiff,

are sufficient to establish a cause of action upon which relief may be granted. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 490 (1996). A cause of action should be dismissed only if it is clearly apparent that the plaintiff can plead no set of facts allowing it to recover. *Bajwa v. Metropolitan Life Insurance Co.*, 208 Ill. 2d 414, 421 (2004). We review *de novo* the dismissal of a complaint pursuant to section 2—615. *Salte v. YMCA of Metropolitan Chicago Foundation*, 351 Ill. App. 3d 524, 526 (2004).

■ The plaintiff's first contention on appeal is that the trial court erred in dismissing counts II, III, IV, V, and VI of its amended complaint because it suffered the deprivation of a valid property interest. The plaintiff argues that based on *Almota*, 409 U.S. 470, 35 L. Ed. 2d 1, 93 S. Ct. 791, its expectation of renewal of the lease was a valid property interest that it was deprived of by the District's failure to renew the lease. However, the facts in the present case are distinguishable from those in *Almota*. Rather, we find instructive the court's opinion in *Patrick*, 258 Ill. App. 3d 1068.

In *Patrick*, Patrick Media Group, Inc. (PMG), leased from the B&O Railroad Company (the Railroad) property on which it maintained three billboards. *Patrick*, 258 Ill. App. 3d at 1069. The Du Page Water Commission (the Commission) acquired the property from the Railroad for $360,000 and subject to the existing leases. *Patrick*, 258 Ill. App. 3d at 1069. Eventually the leases terminated and the Commission requested that PMG remove the billboards from the land. *Patrick*, 258 Ill. App. 3d at 1069. PMG refused and filed a complaint, arguing that the Commission's purchase of the land was tantamount to a constitutional taking. *Patrick*, 258 Ill. App. 3d at 1069.

The trial court determined that the Commission had rightfully assumed the position of landlord by virtue of having acquired the land subject to the existing leases. *Patrick*, 258 Ill. App. 3d at 1069. The trial court also found that the Commission had properly exercised its right as a landlord to terminate the billboard agreements pursuant to their terms. *Patrick*, 258 Ill. App. 3d at 1069.

The reviewing court affirmed. *Patrick*, 258 Ill. App. 3d at 1074. The *Patrick* court held that there was no taking of the Railroad's property or of PMG's billboards. *Patrick*, 258 Ill. App. 3d at 1078. The *Patrick* court noted that the Eminent Domain Act provides for the taking of property where " 'the compensation to be paid *** cannot be agreed upon by the parties interested.' " *Patrick*, 258 Ill. App. 3d at 1075, quoting Ill. Rev. Stat. 1987, ch. 110, par. 7—102. Therefore, the court reasoned that where the interested parties do agree to an amount of compensation, no taking of property by the government occurs. *Patrick*, 258 Ill. App. 3d at 1075. Additionally, the court determined

that no taking had occurred because the record was devoid of evidence that the Railroad was coerced or otherwise forced to part with its property against its will. *Patrick*, 258 Ill. App. 3d at 1076. In fact, there was no evidence to suggest that the Railroad acted in response to a threat or perceived threat of condemnation. *Patrick*, 258 Ill. App. 3d at 1076-77. Finally, the court noted that the sale of the property to the Commission did not destroy PMG's interests. *Patrick*, 258 Ill. App. 3d at 1077. Rather, the Commission acquired the property subject to the leases and had every intention to allow PMG's leases to continue at least for their terms, which were essentially at will with 30 or 60 days' notice. *Patrick*, 258 Ill. App. 3d at 1077. The court noted that PMG did not contend that the Railroad at any time during the period of its ownership of the land could not have lawfully terminated PMG's tenancy by giving it the required notice and allowing it an opportunity to remove its billboards. *Patrick*, 258 Ill. App. 3d at 1077.

We agree with the trial court that *Patrick* is controlling in the present case. In *Patrick*, as in the present case, the lease agreements were terminated according to their terms, without the threat or initiation of condemnation proceedings. As explained in *Patrick*, the termination of a lease according to its terms is not a taking of property by eminent domain. See *Patrick*, 258 Ill. App. 3d 1068 (a taking did not occur when the defendant terminated the plaintiff's billboard leases after purchasing property from a railroad, because the cause of the plaintiff's complaints was not the defendant's actions, but the plaintiff's fragile rights under the billboard leases). Additionally, here, the District acquired the property, subject to the plaintiff's lease, from the previous owner. Since the District and the previous owner agreed to an amount of compensation for the property, no taking had occurred. See *Patrick*, 258 Ill. App. 3d at 1075.

Furthermore, as in *Patrick*, the District had always intended to allow the lease to continue for at least its term. See *Patrick*, 258 Ill. App. 3d at 1077. In fact, the plaintiff and the District had engaged in negotiations to reach an agreement on renewal of the lease. However, eventually the District decided to petition the Village to annex the property. The District was aware that the annexation would be conditioned on the termination of the plaintiff's lease at the end of its term. Just as the prior lessor could have lawfully terminated the plaintiff's lease at the end of its term, the District could also lawfully terminate the lease by giving the required notice and allowing the plaintiff the opportunity to remove its billboard. See *Patrick*, 258 Ill. App. 3d at 1077. The District gave the plaintiff numerous timely notices that it was not renewing the lease. Accordingly, even construing all the allegations in the amended complaint in a light most favor-

able to the plaintiff, the plaintiff had no compensable property interest in its expectation that its lease would be renewed. As such, the trial court properly dismissed counts II, III, IV, V, and VI of the plaintiff's amended complaint.

In so ruling, we note that the plaintiff's reliance on *Almota* is misplaced. In *Almota*, the United States government condemned railroad property that had been leased to the owner of a grain elevator located on the property. *Almota*, 409 U.S. at 470-71, 35 L. Ed. 2d at 5-6, 93 S. Ct. at 793. The government contended that just compensation for the leasehold interest, including the elevator, should be the fair market value of the legal rights possessed by Almota by virtue of the lease as of the date of taking. *Almota*, 409 U.S. at 471, 35 L. Ed. 2d at 6, 93 S. Ct. at 793. The government argued that no consideration should be given to any additional value based on the expectation that the lease might be renewed. *Almota*, 409 U.S. at 471, 35 L. Ed. 2d at 6, 93 S. Ct. at 793. Almota argued, however, that were it not for the condemnation, a willing buyer would pay something additional for the expectation that the railroad would renew the lease. *Almota*, 409 U.S. at 471, 35 L. Ed. 2d at 6, 93 S. Ct. at 793.

The *Almota* Court noted that Almota had an unbroken succession of leases since 1919 and that it was in the interest of the railroad to continue leasing the property, with its grain elevator facilities, in order to promote grain shipment over its lines. *Almota*, 409 U.S. at 475, 35 L. Ed. 2d at 8, 93 S. Ct. at 795. Therefore, the Court held that the government may not take advantage of any depreciation in the property taken that is attributable to the taking. *Almota*, 409 U.S. at 478, 35 L. Ed. 2d at 10, 93 S. Ct. at 796. The concurring justices pointed out that Almota had agreed to bear the risk that the railroad would change its plans, but not that the government would condemn the property for another use. *Almota*, 409 U.S. at 479, 35 L. Ed. 2d at 11, 93 S. Ct. at 797 (Powell, J., concurring, joined by Douglas, J.). The Court therefore held affirmatively on the question of " '[w]hether, upon condemnation of a leasehold, a lessee with no right of renewal is entitled to receive as compensation the market value of its improvements without regard to the remaining term of its lease, because of the expectancy that the lease would have been renewed.' " *Almota*, 409 U.S. at 473, 35 L. Ed. 2d at 7, 93 S. Ct. at 794.

The facts in *Almota* are distinguishable from the present case. In *Almota*, the government purchased the land while the lease had 7½ years to run. The government did not wait until the leasehold expired, but began condemnation proceedings against Almota prior to the lease's termination. As such, the issue addressed in *Almota* concerned entitlement to compensation in a condemnation proceeding. The

present case, however, does not involve a condemnation proceeding. Rather, the District allowed the plaintiff's lease to expire and exercised its right, pursuant to the lease agreement, not to renew the lease for a second term. The present case, unlike *Almota*, involves entitlement to compensation based upon the nonrenewal of a lease at the expiration of its term.

Furthermore, we agree with the Village that the scope and inapplicability of *Almota* were best articulated by the Arizona Court of Appeals in *Whiteco Industries, Inc. v. City of Tuscon*, 168 Ariz. 257, 258-59, 812 P.2d 1075, 1076-77 (1991). In *Whiteco*, the plaintiff leased property on which it maintained two billboards. *Whiteco*, 168 Ariz. at 258, 812 P.2d at 1076. The defendant acquired the property. *Whiteco*, 168 Ariz. at 258, 812 P.2d at 1076. The leases provided for termination if the property was sold and the lessee was given 30 days' prior written notice. *Whiteco*, 168 Ariz. at 258, 812 P.2d at 1076. Accordingly, the defendant gave the required notice and terminated the leases. *Whiteco*, 168 Ariz. at 258, 812 P.2d at 1076. The plaintiff filed a complaint for inverse condemnation. *Whiteco*, 168 Ariz. at 258, 812 P.2d at 1076. The trial court, finding in favor of the plaintiff, concluded that the "plaintiff has sustained its burden and shown a compensable taking in this case.... [t]he subject billboard leases would still be in effect but for the [defendant's] acquisition of the subject property (which would have occurred by condemnation had the lessor not chosen to sell)." *Whiteco*, 168 Ariz. at 258, 812 P.2d at 1076.

On appeal, the *Whiteco* court reversed. The court determined that the leases were terminated by their own terms when the property was purchased by the defendant, leaving the plaintiff with no legal compensable interest of any kind. *Whiteco*, 168 Ariz. at 258, 812 P.2d at 1076. Additionally, the court noted:

"[The plaintiff] cites [*Almota*] as support for the [trial court's] judgment. We do not find it persuasive. The improvements involved in *Almota* were buildings and equipment used in the grain elevator business. The lessor railroad benefited from the leases because it supported grain shipments on its railroad; therefore, the fact of renewal was important. The grain elevators were fixtures, not removable personal property billboards and the lessor and lessee would have continued their relationship except for the taking; therefore, the taker had to pay for the value of the nonremovable fixtures \*\*\*. The *Almota* decision is a narrow exception to the general rule stated in *United States v. Petty* [*Motor Co.*, 327 U.S. 372, 90 L. Ed. 729, 66 S. Ct. 596 (1946)]. Subsequent federal decisions recognize the narrow exception but follow the general rule that the interest of a tenant at will or at sufferance upon

condemned realty is not a compensable property interest." *Whiteco*, 168 Ariz. at 259, 812 P.2d at 1076-77.

■ Finally, we note that the plaintiff also argues that under section 9 of the Highway Advertising Control Act of 1971 (the Act) (225 ILCS 440/9 (West 2002)) it is entitled to just compensation for the loss of its property right. Pursuant to section 8 of the Act (225 ILCS 440/8 (West 2002)), the plaintiff was obligated to obtain a permit in order to place its billboard on the District's property. Section 9 of the Act states:

> "In order to obtain compliance with this Act, the [Illinois] Department [of Transportation] may after July 1, 1973 acquire property and other rights by purchase, gift, condemnation or otherwise. Just compensation shall be paid for the removal of signs lawfully erected or lawfully in existence but not permitted to be maintained under this Act." 225 ILCS 440/9 (West 2002).

The plaintiff argues that since it complied with section 8 of the Act and obtained the requisite permit, it possessed a valid property right in the existence of its billboard. Furthermore, the plaintiff argues that this property right was taken by the District and the Village without payment of just compensation.

At the outset, we note that the District and the Village both argue that this issue is waived because the plaintiff never alleged a claim under the Act in its amended complaint. Rather, the plaintiff first raised these grounds in its response to the District's motion to dismiss. However, we need not reach this issue. Even absent waiver, we find the plaintiff's argument to be without merit. Section 9 of the Act clearly applies to the Illinois Department of Transportation, and not to the District. Furthermore, payment of just compensation is required only where a previously lawful sign is not permitted to be maintained under the Act. In the present case, the removal of the billboard was compelled because the lease term expired. The removal was not compelled pursuant to the Act.

■ The plaintiff's second contention on appeal is that the trial court erred in dismissing count I of its amended complaint because it properly stated a claim under the Eminent Domain Act. The Eminent Domain Act provides that private property shall not be taken or damaged for public use without payment of just compensation. 735 ILCS 5/7—101 (West 2002). The 1993 amendment to the Eminent Domain Act provided specific protection to billboard owners in that:

> "The right to just compensation as provided in this Article applies to the owner or owners of any lawfully erected off-premises outdoor advertising sign that is compelled to be altered or removed under this Article or any other statute, or under any ordinance or regula-

tion of any municipality or other unit of local government, and also applies to the owner or owners of the property on which that sign is erected." 735 ILCS 5/7—101 (West 2002).

As such, the plaintiff argues that it is entitled to compensation because it was compelled to remove its billboard as a result of Village ordinance No. 0—99—80. That ordinance annexed into the Village the property on which the billboard was located. The ordinance also approved the annexation agreement between the District and the Village. The agreement stated that "[t]he District has agreed to remove the existing billboard upon expiring of current lease." The ordinance was passed four years prior to the expiration of the lease. The plaintiff argues that ordinance No. 0—99—80 was clearly an act of condemnation on the date that it was passed and that this resulted in the taking of its property without payment of just compensation. We disagree.

Contrary to the plaintiff's contention, Village ordinance No. 0—99—80, approving the annexation agreement between the District and the Village, did not compel the removal of the plaintiff's billboard. The District petitioned the Village to annex its property. The agreement clearly stated that the District agreed to remove the existing billboard upon the expiration of the lease. The District and the Village did not take any action, condemnation or otherwise, to compel the removal of the plaintiff's billboard. Rather, the District exercised its right, as a landlord, not to renew the lease and to allow the lease to expire on its own terms. See *Patrick*, 258 Ill. App. 3d 1068 (the termination of a lease according to its terms is not a taking of property by eminent domain). As such, the Village ordinance at issue here was clearly not an ordinance or regulation that compelled the removal of the plaintiff's billboard within the meaning of the 1993 amendment to section 7—101 of the Eminent Domain Act (735 ILCS 5/7—101 (West 2002)). Accordingly, the trial court did not err in dismissing count I of the plaintiff's amended complaint.

In so ruling, we note that the plaintiff relies on *Department of Transportation v. Drury Displays, Inc.*, 327 Ill. App. 3d 881 (2002), to support its contention that the ordinance compelled the removal of its billboard. In *Drury Displays*, CSX Transportation, Inc. (CSX), a railroad and landowner, executed a quitclaim deed conveying property to the Department of Transportation (the Department) for $49,180. *Drury Displays*, 327 Ill. App. 3d at 882. On the subject property, Drury Displays had leased space for a single billboard and the National Advertising Company (National) had leased space for two billboards. *Drury Displays*, 327 Ill. App. 3d at 882. Although the leases were terminable by either party upon 60 days' written notice, the Department filed a complaint seeking to condemn Drury's and National's leasehold interests in the property.

The *Drury Displays* court stated:

"We pause to note that the Department did not exercise any rights it might have possessed, as a successor in interest to CSX, against Drury or National. Instead, in the circuit court it filed a condemnation complaint to terminate the defendants' interests. Given this turn of events, we point out that the rights between condemnor and condemnee are different from the rights between landlord and tenant." *Drury Displays*, 327 Ill. App. 3d at 883-84.

The court held that billboard owners have a right to just compensation for any condemned sign. *Drury Displays*, 327 Ill. App. 3d at 888. Additionally, the court went on to explain that the 1993 amendment to section 7—101 of the Eminent Domain Act (735 ILCS 5/7—101 (West Supp. 1993)) indicates that owners of billboards that are condemned under the Act, as well as billboard owners who are forced to remove their signs under any regulatory authority, are entitled to just compensation. *Drury Displays*, 327 Ill. App. 3d at 888-89.

Contrary to the plaintiff's contention, *Drury Displays* is inapposite to the present case. In the present case, the District and the Village did not initiate condemnation proceedings against the plaintiff's leasehold interest. Additionally, the plaintiff was not forced to remove its billboard under any regulatory authority. Rather, the District exercised its contractual right as landlord to terminate the lease upon the expiration of its term. The *Drury Displays* court specifically stated that the rights between condemnor and condemnee are different from the rights between landlord and tenant. As such, we find the plaintiff's reliance on *Drury Displays* misplaced.

■ The plaintiff's final contention on appeal is that the trial court erred in dismissing count VIII of its amended complaint because it stated a valid claim for civil conspiracy. In its complaint, the plaintiff alleged that the annexation agreement was evidence that the District and the Village conspired to perform the unlawful act of avoiding condemnation proceedings by allowing the plaintiff's lease to expire. The plaintiff additionally alleged that, in the furtherance of this unlawful purpose, the Village tortiously interfered with the plaintiff's business relationship with the District. We find this contention to be without merit.

The elements of a civil conspiracy are: (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act. *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 62-63 (1994). In the present case, the District and the Village did not engage in any unlawful behavior. The District had a

142

contractual right to terminate the lease at the end of its term. See *Patrick*, 258 Ill. App. 3d 1068. The Village did not force annexation or commence condemnation proceedings against the property. The District petitioned the Village to annex the property. The annexation agreement reveals that the District agreed to the removal of the billboard at the end of its lease term. As such, because the plaintiff has not set forth sufficient facts to support a cause of action for civil conspiracy, the trial court did not err in dismissing count VIII of its amended complaint.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

McLAREN and GROMETER, JJ., concur.