[No. 57151-6-I.   Division One.   January 22, 2007.]

CLEAR CHANNEL OUTDOOR, *Appellant,* v. SEATTLE POPULAR MONORAIL AUTHORITY, *Respondent.*

*Paul R. Taylor* and *William H. Walsh*, for appellant.

*P. Stephen DiJulio*, *Bradley P. Thoreson*, and *Jeffrey B. Taraday* (of *Foster Pepper, PLLC*), for respondent.

¶1 GROSSE, J. — Clear Channel Outdoor, owner of a billboard in Ballard, challenges the summary judgment dismissal of its claim of inverse condemnation against Seattle Popular Monorail Authority (Monorail). Because Clear Channel had no contractual right to any automatic extension or renewal of its lease agreement and occupied the property as a holdover tenant, the mere fact that Monorail took possession by a purchase and sale in lieu of condemnation does not give Clear Channel any additional rights in the leasehold. We affirm.

FACTS

¶2 As part of its acquisition of real estate along the projected 14-mile Monorail "Green Line" route from Ballard to West Seattle, Monorail purchased the real property on which Clear Channel's billboard was located. It acquired the property by statutory warranty deed. There is no dispute that the property was conveyed in lieu of and under the threat of condemnation.

¶3 Clear Channel had maintained the billboard at that site for approximately 27 years. The original lease agreement, which expired in 1992, was terminable at will by either party upon 30 days' written notice. Clear Channel thereafter maintained the billboard on the property pursuant to a month-to-month tenancy.

¶4 After purchasing the property, Monorail provided two written notices to Clear Channel to remove the billboard. The initial notice of 30 days was superseded with a 90-day notice, apparently prompted by a concern for provisions contained in the original lease.[1] The second notice included a reminder to Clear Channel that relocation benefits were available. On January 27, 2005, Clear Channel removed its

---

[1] The lease also provided an additional clause:

6. SPECIAL TERMINATION. . . .

Lessor shall have the right to terminate this Lease by giving Lessee a ninety (90) day written notice if . . . Lessor sells or subleases the property to a third party who wishes this Lease terminated; if Lessor changes the use of the premises, or if for any reason the Lessor's prime lease is terminated.

billboard. Clear Channel did not file a claim for relocation costs.

## ANALYSIS

¶5 A month-to-month tenancy creates no property interest that entitles the tenant to compensation. The State, having succeeded to the title of the landlord as condemnor, has the right to terminate the tenancy on a month's notice if an occupant is a month-to-month tenant.[2] Nevertheless, Clear Channel claims that it is entitled to compensation as a result of that purchase, arguing that it would still enjoy the benefits of its tenancy but for the purchase of the property by Monorail. We cannot agree.

¶6 In order to be a protected property interest, the interest must be something more than a mere unilateral expectation of continued rights or benefits.[3] Here, Clear Channel had no interest in the property. In *Ryan Outdoor Advertising, Inc. v. United States*,[4] billboard companies sued the government for failure to renew revocable permits after the government had issued policies to restrict the billboards on federal lands. The Ninth Circuit rejected their inverse condemnation claim, holding that once the permits were revoked or expired, "[t]here was no longer any interest to be compensated."[5] In *Whiteco Industries, Inc. v. City of Tucson*,[6] the court held that a terminated leasehold interest is not compensable. There, the billboard operator maintained the signs pursuant to a lease it had with the previous landowners. The lease provided for termination in the event

---

[2] *See* 2 Julius L. Sackman, Nichols on Eminent Domain § 5.02[6][e] (3d ed. 2006) ("The fact that the lease may be terminated by the landlord on short notice does not affect its status as property, although a lease must be more than a month-to-month tenancy for a lessee to be entitled to compensation.").

[3] *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1005, 104 S. Ct. 2862, 81 L. Ed. 2d 815 (1984); *Bagford v. Ephraim City*, 904 P.2d 1095, 1097 (Utah 1995) (mere unilateral expectation of removal is not sufficient).

[4] *Ryan Outdoor Adver. v. United States*, 559 F.2d 554 (9th Cir. 1977).

[5] *Ryan Outdoor Adver.*, 559 F.2d at 557.

[6] *Whiteco Indus., Inc. v. City of Tucson*, 168 Ariz. 257, 812 P.2d 1075 (1990).

the property was sold and the lessee was given 30 days' written notice. The city purchased the property, gave such notice, and permitted the billboard to operate on a month-to-month tenancy. The city eventually demanded removal. In response, Whiteco sued for inverse condemnation under state and federal law. The appellate court held that the termination of the lease left Whiteco with no legal compensable interest of any kind.[7]

¶7 Clear Channel did not acquire any greater rights under the month-to-month tenancy than it had under the original lease. Clear Channel cites several cases that appear to hold a leasehold interest in land is compensable. In each of those cases, however, it was an ongoing lease that was terminated, rather than a month-to-month tenancy.[8]

¶8 Clear Channel primarily relies upon *Almota Farmers Elevator & Warehouse Co. v. United States*[9] to support its theory. *Almota* held that a tenant that made substantial improvements to condemned property under a lease with several years left to run was entitled to compensation for the value of the improvements. In determining what the values of those improvements were, the Court held that the probability of renewal of the tenant's lease should be taken into account in establishing reimbursement. In subsequent cases, the *Almota* holding has been limited to those situa-

---

[7] *Whiteco Indus.*, 168 Ariz. at 258; *see United States v. 5.96 Acres of Land*, 593 F.2d 884 (9th Cir. 1979) (holding that Knappton was not entitled to compensation for pilings damaged by government's building of a dam because the pilings and dikes were built under permits revocable at will and thus there was no property interest under the Fifth Amendment); *see also Ryan Outdoor Adver.*, 559 F.2d 554 (holding that permits issued for maintenance of outdoor signs along the highways do not require compensation when revoked).

[8] *Spokane Sch. Dist. No. 81 v. Parzybok*, 96 Wn.2d 95, 103, 633 P.2d 1324 (1981) (condemnation award exceeded purchase price indicated in option and it was loss of a contract right permitting option holder to join in condemnation); *State v. Obie Outdoor Adver., Inc.*, 9 Wn. App. 943, 516 P.2d 233 (1973) (billboard operator entered into 10-year lease in 1971 and condemnation was in 1973; court held that the valuation of the remaining leasehold should be taken into account).

[9] *Almota Farmers Elevator & Warehouse Co. v. United States*, 409 U.S. 470, 93 S. Ct. 791, 35 L. Ed. 2d 1 (1973).

tions where improvements to real property are involved.[10] Here, the billboard is a removable fixture[11] and not an improvement that enhances the property.

¶9 More relevant is *National Advertising Co. v. North Carolina Department of Transportation.*[12] In *National Advertising*, the state purchased property on which an advertising sign was located and then terminated the month-to-month lease for the sign. The state requested the sign owner remove the sign. When the sign owner failed to do so, the North Carolina Department of Transportation moved the sign. The sign owner sued for inverse condemnation. The trial court dismissed the suit for lack of standing, holding that the interest in the land was properly terminated prior to the filing of the action. Like Clear Channel, the sign owner had no interest in the property at the time it commenced its action for inverse condemnation.

*Claim under 42 U.S.C. § 1983*

¶10 Clear Channel contends the trial court erred in dismissing its action under 42 U.S.C. § 1983. We disagree. Once the trial court correctly determined that there was no basis for a claim under inverse condemnation, Clear Channel exhausted its state procedures and its claim was ripe for consideration under 42 U.S.C. § 1983.

¶11 However, because there is no property right in a month-to-month tenancy, the claims asserted under federal

---

[10] *United States v. 57.09 Acres of Land*, 757 F.2d 1025, 1028 (9th Cir. 1985) (removable equipment not compensable under the "narrow exception" created by *Almota*); *United States v. 42.13 Acres of Land*, 73 F.3d 953 (9th Cir. 1996); *Whiteco Indus. Inc.*, 168 Ariz. at 259 (grain elevators were fixtures, not removable, personal property billboards).

[11] While at first blush, the term removable fixture appears to be somewhat of an anomaly, the term has been utilized by both the United States and Washington Supreme Courts. *See United States v. Gen. Motors Corp.*, 323 U.S. 373, 379, 65 S. Ct. 357, 89 L. Ed. 311 (1945); *M.H.B. Co. v. Desmond*, 151 Wash. 344, 351, 275 P. 733 (1929); *see also* 8A PATRICK J. ROHAN & MELVIN A. RESKIN, NICHOLS ON EMINENT DOMAIN § 28.01[2][a] (3d ed. 2006) ("Whether an item becomes a fixture or remains personal property depends on the facts and circumstances of the particular case.").

[12] *Nat'l Adver. Co. v. N.C. Dep't of Transp.*, 124 N.C. App. 620, 478 S.E.2d 248 (1996).

law must also fail.[13] This claim for relief is based upon the same facts as set forth in the inverse condemnation.[14] Clear Channel has no enforceable interest in the property.[15]

¶12 The trial court is affirmed.

AGID and COX, JJ., concur.

Review denied at 161 Wn.2d 1027 (2007).

---

[13] *Tiffany Family Trust Corp. v. City of Kent*, 155 Wn.2d 225, 238-39 n.11, 119 P.3d 325 (2005).

[14] *Tiffany Family Trust Corp.*, 155 Wn.2d at 238-39 n.11.

[15] *State v. J.R. Leasing Co.*, 1 Wn. App. 944, 947, 466 P.2d 185 (1970).