# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *CBS Outdoor, Inc. v. Village of Itasca*, 2011 IL App (2d) 101117

---

| | |
|---|---|
| Appellate Court Caption | CBS OUTDOOR, INC., Plaintiff-Appellant, v. THE VILLAGE OF ITASCA and WAYNE HUMMER TRUST COMPANY, N.A., as Trustee Under a Trust Agreement Dated April 16, 2007, and Known as Trust BEV 2384, Defendants-Appellees. |
| District & No. | Second District<br>Docket No. 2-10-1117 |
| Filed | November 9, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action seeking a declaratory judgment that the provisions of an ordinance requiring the removal of a billboard maintained by plaintiff on defendant's property pursuant to a lease were invalid and unenforceable and alleging a violation of the Eminent Domain Act, the trial court properly granted a motion to dismiss on the ground that plaintiff lacked standing where no property was taken from plaintiff. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 10-MR-263; the Hon. Kenneth L. Popejoy, Judge, presiding. |
| Judgment | Affirmed and remanded. |

| Counsel on Appeal | Robert J. Weber, of Law Offices of Robert J. Weber, of Chicago, for appellant. |
|---|---|
| | Charles E. Hervas and Rebecca J. Ketchie, both of Hervas, Condon & Bersani, P.C., of Itasca, for appellee Village of Itasca. |
| Panel | JUSTICE McLAREN delivered the judgment of the court, with opinion. Justices Schostok and Hudson concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff, CBS Outdoor, Inc., appeals from the trial court's dismissal of its second amended complaint. We affirm and remand.

¶ 2                          I. BACKGROUND

¶ 3    Since 1982, CBS (or its predecessors) has leased a portion of the property at 865 W. Irving Park Road in Itasca for a billboard. Defendant Wayne Hummer Trust Company (the Trust) is the current owner of the property. In 1983, defendant the Village of Itasca enacted an ordinance rezoning the property from B-3 to B-3 with a special use as a planned development. As conditions of the enactment of that ordinance, Itasca required the then-owner of the property to cancel its lease with the then-owner of the billboard and remove the billboard by June 12, 1992. Neither condition was met.

¶ 4    On April 30, 1998, a 10-year lease was signed allowing maintenance of the billboard on the property until May 31, 2008. The tenant billboard owner was given the right to continue in possession after May 31, 2008, for one-year terms, provided that the property owner did not serve a notice of termination at least 90 days before the end of a term. Shortly thereafter, by a series of mergers, CBS became owner of the billboard.

¶ 5    In 2003, a new property owner, TST/Impreso (TST), requested that Itasca amend the planned development to add an addition to the existing building on the property. TST agreed to terminate the billboard lease on May 31, 2008 (the end of its term), and agreed to refrain from entering into any other lease concerning the use or maintenance of a billboard on the property. TST was also to cause the existing billboard to be removed by June 30, 2008. For each month after that date that the billboard remained on the property, TST was to pay damages to Itasca in the amount of 90% of the monthly rental that it received for the billboard or, if no lease existed, $2,250 per month.

¶ 6    The Trust contracted to buy the property from TST in June 2007, contingent on Itasca's grant of a special use allowing the Trust's anticipated tenant to use the building on the

property for an office, warehouse, and sales area for floor and wall coverings. On July 24, 2007, Itasca enacted ordinance No. 1395-07 (Itasca Zoning Ordinance No. 1395-07 (approved July 24, 2007)) amending the planned development, including a provision requiring removal of the billboard by June 30, 2008. The Trust acquired the property on August 30, 2007, and entered into a lease of the property with Mr. David's Carpet Service, subject to CBS's rights under the 1998 lease. In September 2007, the Trust served CBS with notice of termination of that lease; the lease then expired on its own terms on May 31, 2008. While the Trust has asked that CBS remove the billboard, the sign remains standing on the property.

¶ 7    CBS filed a complaint for declaratory judgment and injunctive relief in the circuit court of Cook County on July 9, 2008. The case was removed to the United States District Court for the Northern District of Illinois, where CBS filed an amended complaint. The federal court remanded to Cook County the state issues and stayed proceedings on the federal issues, pending resolution of the state claims.

¶ 8    CBS then filed a five-count second amended complaint in Cook County; count I sought declaratory judgment that the removal provisions of the ordinance were invalid and unenforceable. Counts II and III alleged violations of its rights to substantive due process (II) and equal protection (III) under the Illinois Constitution. Count IV alleged violation of its federal civil rights, and count V alleged violation of the Eminent Domain Act (Act) (735 ILCS 30/1-1-1 *et seq.* (West 2006)). The cause was then transferred to the circuit court of Du Page County.

¶ 9    Itasca filed a combined motion to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2006)). Itasca argued that the trial court should dismiss under section 2-615 of the Code: (1) counts I through III, because they were "time-barred"; (2) counts I through III and V, because CBS lacked standing; (3) in the alternative, counts I and II, because CBS failed to allege sufficient facts "to overcome the presumptive validity of the challenged ordinances"; and (4) count III, because CBS failed to allege a cause of action for an equal protection violation under the Illinois Constitution. Itasca also argued that CBS's federal claims in count IV should be dismissed pursuant to section 2-619 of the Code.

¶ 10    CBS then filed a response to the motion to dismiss and included requests to strike various exhibits attached to the motion to dismiss. On May 17, 2010, during argument on the motion to strike, the trial court explained to Itasca:

"[Y]ou've got a 2-615 motion to dismiss under the first four counts of the complaint and you've attached a whole bunch of other documents. And I say in regard to all of this, I kept saying why is this not 2-619. Why is this not 2-619? I'm going on and on and on, and I'm looking at the cases and your cases don't give me any reason why it isn't. You have maybe an appropriate 2-619 motion to dismiss on a [*sic*] affirmative matters, and you're welcome to file a 2-619 motion to dismiss if you deem that appropriate. But a 2-615, I'm going to grant unless you've got something, some wizardry thing you're going to hit to me in the next minute here, I'm going to grant their [*sic*] motion to strike the various exhibits that you have attached to it, because I don't have any basis looking at

those on a 2-615.

* * *

So I'm going to grant the motion to strike the exhibits that was prepared in regard to same. With the striking of those exhibits, I am striking without prejudice the 2-615 aspects of your motion to dismiss Counts 1 through 4 [*sic*] for you to replead and amend a motion to dismiss as you deem appropriate on a 2-619.1 which combines 15 and 19 or separately or however you want to do it in regard to same."

The court's written order of that date states, "The motion to strike exhibits of CBS Outdoor is granted. The Village of Itasca shall file an amended motion to dismiss and memo of law on or before June 18, 2010." While Itasca filed a "Revised Memorandum of Law in Support of Combined Motion to Dismiss" on June 17, adding an argument regarding section 2-619 and CBS's lack of standing on counts I through III and V, the record does not contain a new motion to dismiss or even a notice of filing an amended motion.

¶ 11    Nevertheless, on October 6, 2010, the trial court ruled on a motion to dismiss. The court dismissed counts I through III and V with prejudice, finding that counts I through III were time-barred pursuant to section 11-13-25(a) of the Illinois Municipal Code (Municipal Code) (65 ILCS 5/11-13-25(a) (West 2006)) and that CBS lacked standing to bring a claim under the Act (735 ILCS 30/1-1-1 *et seq.* (West 2006)) in count V. Count IV was "removed back" to federal court. This appeal followed.

¶ 12                                II. ANALYSIS

¶ 13    We must first address the muddled procedural aspect of this case. The trial court clearly struck "the 2-615 aspects" of Itasca's combined motion to dismiss and ordered Itasca to "file an amended motion to dismiss and memo of law." While Itasca filed a revised memorandum of law, the record does not contain an amended motion to dismiss. Curiously, CBS never raises the lack of a motion. However, since CBS did not object to the lack of such a motion or claim prejudice because of it, we will consider the absence of the motion forfeited, and we will address the merits of the case.

¶ 14                              Limitations Period

¶ 15    CBS contends that the trial court applied the wrong limitations period in concluding that counts I through III of its second amended complaint were time-barred. Itasca enacted ordinance No. 1395-07, including the provision requiring removal of the billboard, on July 24, 2007. Plaintiff filed its complaint on July 9, 2008, 351 days later. In its limitations analysis, the trial court applied section 11-13-25(a) of the Municipal Code, which states:

"Any special use, variance, rezoning, or other amendment to a zoning ordinance adopted by the corporate authorities of any municipality, home rule, or non-home rule, shall be subject to de novo judicial review as a legislative decision, regardless of whether the process of its adoption is considered administrative for other purposes. Any action seeking the judicial review of such a decision shall be commenced not later than 90 days after the date of the decision." 65 ILCS 5/11-13-25(a) (West 2006).

-4-

CBS argues that it did not seek review of Itasca's decision to grant a special use. Instead, it alleged that the removal provision was invalid on its face, *ultra vires*, and unenforceable, and that Itasca violated state statutes and CBS's constitutional rights by including the removal provision in the ordinance. According to CBS, the ordinance contains "dual aspects" such that there is a "bifurcation (separating the grant of the special use from the Village's unlawful act; *i.e.*, the illegal removal of a legal non-conforming sign)." This "bifurcation" requires the removal provision to be considered separately from the grant of the special use. Had CBS sought review "of the wisdom" of Itasca's decision to grant the special use, section 11-13-25(a) and its 90-day limitations period would apply. However, since CBS alleged violations of state statutes and constitutional provisions, the applicable limitations period is that contained in section 13-205 of the Code, which provides in part:

> "[A]ll civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued." 735 ILCS 5/13-205 (West 2006).

We disagree.

¶ 16 The reach of a limitations statute is a question of law, which is to be reviewed *de novo*. *Village of Glendale Heights v. Glen Ayre Enterprises, Inc.*, 404 Ill. App. 3d 205, 207 (2010). In construing a statute, our primary goal is to determine the legislature's intent, and the best indicator of that intent is the plain language of the statute. *Village of Glendale Heights*, 404 Ill. App. 3d at 207.

¶ 17 Section 11-13-25(a) provides that "*Any* action seeking the judicial review" of a decision by a municipality regarding "*any* petition or application for a special use *** *shall* be commenced not later than 90 days after the date of the decision." (Emphases added.) 65 ILCS 5/11-13-25(a) (West 2006). The statute does not differentiate between actions seeking review "of the wisdom" of a decision to grant a special use and those alleging that the municipality did not have the authority to include certain provisions in its grant of a special use and that it violated state statutes and constitutional provisions in granting a special use. "Any" review includes all reviews. These reviews "shall be commenced not later than 90 days after the date of the decision." 65 ILCS 5/11-13-25(a) (West 2006). The 90-day limitations period for review of these decisions is not optional. After 90 days have run, the decision of a municipality regarding a petition or application for a special use is deemed valid.

¶ 18 This court analyzed the application of section 11-13-25(a) in *Our Savior Evangelical Lutheran Church v. Saville*, 397 Ill. App. 3d 1003 (2009). In *Our Savior*, the Aurora city council, among other things, denied the church's application for a special use permit. The church then filed a three-count complaint in the circuit court, seeking: (1) review under the Administrative Review Law of an action not relevant to our discussion here; (2) review, via a writ of *certiorari*, of its allegation that the city council erred in denying the special use permit; and (3) declaratory judgment that the city's action violated the Illinois Religious Freedom Restoration Act (775 ILCS 35/1 *et seq.* (West 2008)). *Our Savior*, 397 Ill. App. 3d at 1017. While *Our Savior* did not involve a question of the limitations period contained in section 11-13-25(a), it involved the application of the *de novo* standard of judicial review, added in a recent amendment of that section, to a question of "whether the denial of the special use permit complied with substantive due process." *Our Savior*, 397 Ill. App. 3d at

1028. This court concluded that section 11-13-25(a) as amended applied. *Our Savior*, 397 Ill. App. 3d at 1027. We can see no reason why the standard of review provided in section 11-13-25(a) would apply to a case involving an allegation of a statutory violation in a decision regarding a special use permit but the limitations period contained in the very next sentence of the section would not. The review of Itasca's ordinance granting the special use permit, including the removal provision, is clearly provided for in the limitations period language contained in section 11-13-25(a). Therefore, section 13-205 of the Code and its five-year limitations period do not apply. As CBS brought this action 351 days after Itasca's decision, the trial court did not err in concluding that counts I through III of CBS's second amended complaint were time-barred.

¶ 19                                    Lack of Standing

¶ 20     Itasca raised only one new section 2-619 argument in its revised memorandum: that CBS lacked standing to bring counts I through III and V. The trial court addressed this argument only in relation to count V and CBS's standing to pursue relief under the Act (735 ILCS 30/1-1-1 *et seq.* (West 2006)), finding that CBS lacked such standing and dismissing count V on this basis. CBS does not raise the issue of standing regarding counts I through III in this appeal.

¶ 21     CBS argues that the implementation of the removal provision in ordinance No. 1395-07 was a taking under section 10-5-5(b) of the Act, which provides in part:

> "The right to just compensation, as provided in this Act, applies to the owner or owners of any lawfully erected off-premises outdoor advertising sign that is compelled to be altered or removed under this Act or any other statute, or under any ordinance or regulation of any municipality ***." 735 ILCS 30/10-5-5(b) (West 2006).

CBS argues that its billboard was a legal, nonconforming use: legally constructed in 1982, nonconforming because of Itasca's 2008 amendment prohibiting off-premises advertising. It also had a contractual right to maintain the billboard until June 2008 and thereafter from year to year. Thus, according to CBS, it was entitled to compensation for the forced removal of its billboard. We disagree.

¶ 22     This court declined to adopt this argument in *Lamar Advantage G.P. Co. v. Addison Park District*, 354 Ill. App. 3d 130 (2004). In *Lamar Advantage*, the plaintiff maintained a billboard pursuant to a 15-year lease on property that was eventually purchased by the Addison park district. While the plaintiff and the district negotiated to extend the lease for another term, the district also sought annexation of the property into the Village of Addison, which notified the district that it was " 'very interested to see the billboard removed at the end of' " the current lease. *Lamar Advantage*, 354 Ill. App. 3d at 132. Addison and the district entered into an annexation agreement that included the express statement that the district had agreed to remove the billboard at the expiration of the current lease term, just less than four years later. Addison passed ordinances approving the agreement, annexing the property, and rezoning the property. The district subsequently sent notice to the plaintiff, more than a year before the expiration of the lease, that the lease would not be renewed. *Lamar Advantage*, 354 Ill. App. 3d at 133.

¶ 23    Contrary to the plaintiff's argument, this court concluded that the ordinance approving the annexation "did not compel the removal of the plaintiff's billboard." *Lamar Advantage*, 354 Ill. App. 3d at 140. The agreement stated that the district agreed to remove the billboard at the expiration of the lease; neither the district nor Addison took any action, "condemnation or otherwise," to compel the removal of the billboard. *Lamar Advantage*, 354 Ill. App. 3d at 140. Instead, the district, as landlord, "exercised its right *** not to renew the lease and to allow the lease to expire on its own terms." *Lamar Advantage*, 354 Ill. App. 3d at 140. The court noted that the termination of a lease according to its terms is not a taking of property by eminent domain and found no error in the trial court's dismissal of that claim. *Lamar Advantage*, 354 Ill. App. 3d at 140.

¶ 24    Here, the Trust similarly allowed the lease to expire according to its terms; therefore, there was no taking of CBS's property by eminent domain. CBS argues that *Lamar Advantage* is distinguishable because of the "pervasive coercion that cloaks the critical aspects of this case." According to CBS, Itasca used the Trust as a "stalking horse" to accomplish the illegal purposes of selling its own zoning discretion and removing the billboard without payment of just compensation. However, CBS fails to truly distinguish the actions of Itasca in this case from the actions of Addison in *Lamar Advantage*. In both cases, the property owners sought from the municipalities some beneficial action regarding their properties. The municipalities, in turn, agreed to take the requested actions, provided that the owners agreed to allow the billboard leases to expire. Neither municipality was required to do what was requested; neither property owner was forced to accept the conditions put forward by the municipality. In both cases, both sides had to decide if the proposed agreements were in their best interests. The Trust could have declined to accept Itasca's offer and simply applied for the special use without an agreement. If the application was not granted, the Trust could have then proceeded through the usual appeal process or instituted litigation if it felt that the application was wrongfully denied. What CBS calls "coercion" was nothing more than negotiation.

¶ 25    Further, CBS's arguments on appeal regarding coercion are different from those it raised in the trial court. In its second amended complaint, CBS alleged that "[o]n information and belief, *** the sole reason that the Trust served said notice of termination upon [CBS] was the Village's threat to impose monetary penalties upon the Trust." Obviously, this involves activities that took place *after* the passage of the ordinance, not in the negotiation of the removal provision and the special use. The potential monetary penalties existed only because of the agreement between Itasca and the Trust. In addition, once a party enters into a contract, it is not coercion to demand that the party perform it. See *Crossroads Ford Truck Sales, Inc. v. Sterling Truck Corp.*, 341 Ill. App. 3d 438, 447 (2003) (involving a franchise agreement). CBS has failed to allege any coercion here.

¶ 26    At oral argument, CBS argued that it did not receive proper notice of a zoning hearing regarding the special-use application. However, other than two references to the fact that the removal provision was inserted into the ordinance "without notice to CBS," CBS nowhere in its second amended complaint alleged that its rights were violated or that the ordinance is invalid because CBS did not receive adequate notice of the proposed ordinance. Generally, an issue raised for the first time on appeal is forfeited. *Helping Others Maintain*

*Environmental Standards v. A.J. Bos*, 406 Ill. App. 3d 669, 695 (2010). We will not consider this line of argument.

¶ 27     As there was no taking of CBS's property under the Act, we find no error in the trial court's dismissal of count V for lack of standing.

¶ 28     Because CBS's state claims were properly dismissed, the case shall be remanded to the United States District Court for the Northern District of Illinois for further proceedings on CBS's federal claims.

¶ 29                            III. CONCLUSION

¶ 30     For these reasons, the judgment of the circuit court of Du Page County is affirmed, and the cause is remanded to the United States District Court for the Northern District of Illinois for further proceedings.

¶ 31     Affirmed and remanded.